Affirmed and Memorandum
Opinion filed April 22, 2010.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-09-00805-CR

____________

 

EX PARTE JEREMY WRIGHT 

 

 



 

On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1228107

 



 

M E M O R
A N D U M   O P I N I O N

Appellant has been charged with five felony offenses: capital
murder in cause number 1203978; aggravated robbery in cause numbers 1203979 and
1200684; and burglary of a habitation in cause numbers 1191005 and 1192481.  The
trial court initially did not set bond for the capital murder charge.  Bond was
set at $200,000 in each of the other cases.  Appellant filed a pre-trial
application for writ of habeas corpus.  The trial court then set pre-trial bond
at $750,000 in the capital murder case.  After a writ hearing, the court denied
appellant’s request to reduce his bonds.  This appeal followed.

 

The Writ
Hearing

At the writ hearing, the parties stipulated to the facts surrounding the
charged offenses.[1]  According to the stipulation, evidence
would establish that appellant and two other men robbed Randi Johnson in his
home at gunpoint.  Appellant fired his weapon four times, hitting Johnson once
in the leg.  Johnson later identified appellant from a photo array as the
person who shot him.  The group fled the home with a cellular phone. The
suspects were later located through the stolen cell phone from this aggravated
robbery.

Appellant and the other two men then followed four people
into an apartment.  While appellant held a gun on one victim, his co-defendant
fired a gun, injuring one victim and killing another.  Appellant hit one of the
men inside the apartment with his weapon.  Witnesses identified appellant as
one of the gunmen.  Eight days later, two men entered Mark Landers’ apartment
and robbed him at gunpoint.  Landers identified appellant as one of the
perpetrators who held him at gunpoint. 

In the burglary cases, appellant was observed entering the victims’
apartments and leaving with property.  A fingerprint identified as belonging to
appellant was found in one of the apartments.  Appellant was in possession of
one of the weapons used in the crimes, and he led the police to the other
weapon.  Appellant subsequently confessed to committing thirteen robberies.

Appellant testified that he was twenty-two at the time of the
writ hearing.  He was born in Memphis, Tennessee. He testified he moved to
Harris County in 2005 and had been living at the same address until his arrest.
 His father also lives in Harris County, and he has some aunts and uncles who
live in Texas.  He testified that he did not have the ability to pay $150,000
to a bonding company and he has no real property, stocks, bonds or other assets
to pledge as collateral.  He testified that his father is in retail, but he
does not know how much his father earns.  He did not think his father could
help him post bond.  He acknowledged that he has family in Memphis who could
help him, however.

Appellant’s counsel argued that the bonds for the burglaries
should be reduced to $10,000 and $20,000, the bond in the aggravated robberies
should be reduced to $30,000 each, and bond in the capital case should be
reduced to $500,000.  The trial court denied the request.

Standard
of Review

In his sole issue in this appeal, appellant contends that the
trial court erred in denying his request to lower his bonds.  He asserts that
the bonds, which total over $1,500,000, are excessive and deny him his right to
reasonable bail.[2] 

We review a trial court’s ruling on the setting of bond under
an abuse of discretion standard of review.  See Ex parte Rubac, 611
S.W.2d 848, 849, 850 (Tex. Crim. App. 1981).  A defendant who seeks a reduction
in the amount of bond has the burden of proof to demonstrate that the bond is
excessive. Maldonado v. State, 999 S.W.2d 91, 93 (Tex. App.—Houston
[14th Dist.] 1999, pet. ref’d). 

The primary purpose of an appearance bond is to secure the accused’s
presence at trial on the charged offense.  Maldonado, 999 S.W.2d at 93.  Bail
should be set high enough to give reasonable assurance that the defendant will
appear at trial, but it should not operate as an instrument of oppression.  Id.
 Bail set at an amount higher than reasonably calculated to fulfill this
primary purpose is excessive under the Eighth Amendment.  In re Durst,
148 S.W.3d 496, 498 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  While the
decision regarding a proper bail amount lies within the sound discretion of the
trial court, the court is required to consider criteria set forth in
article 17 .15 of the Code of Criminal Procedure, which provides as follows:

The amount of bail to be required in any case is to be
regulated by the court, judge, magistrate or officer taking the bail; they are
to be governed in the exercise of this discretion by the Constitution and by
the following rules:

 

1. The bail shall be sufficiently high to give
reasonable assurance that the undertaking will be complied with.

2. The power to require bail is not to be used so as
to make it an instrument of oppression.

3. The nature of the offense and the circumstances
under which it was committed are to be considered.

4. The ability to make bail is to be regarded, and
proof may be taken upon this point.

5. The future safety of a victim of the alleged
offense and the community shall be considered.

Tex. Code Crim. Proc. Ann. art. 17.15 (Vernon 2005); see Ludwig v.
State, 812 S.W.2d 323, 324 (Tex. Crim. App.1991) (noting that the court is
to be guided by the article 17.15 factors). We measure the trial court’s ruling
against these criteria. Ex parte Beard, 92 S.W.3d 566, 573 (Tex. App.—Austin
2002, pet. ref’d).

            In addition to these criteria, the following factors in
determining bail may be considered: (1) the accused’s work record; (2) the
accused’s family and community ties; (3) the accused’s length of residency; (4)
the accused’s prior criminal record; (5) the accused’s conformity with previous
bond conditions, if any; (6) the existence of any other outstanding bonds; and
(7) aggravating circumstances alleged to have been involved in the charged
offense.  Maldonado, 999 S.W.2d at 93.

The Nature
and Circumstances of the Offenses

The nature of the offense and circumstances surrounding the
crime are primary factors in determining what constitutes reasonable bail.  See
Ex parte Davila, 623 S.W.2d 408, 410 (Tex. Crim. App. 1981); Ex parte Hunt, 138 S.W.3d 503, 506 (Tex. App.—Fort
Worth 2004, pet. ref'd).  In considering the nature of the offense, it is also
proper to consider the possible punishment.  Maldonado, 999 S.W.2d at
95; Wright v. State, 976 S.W.2d 815, 820 (Tex. App.—Houston [1st Dist.]
1998, no pet.).  When the nature of the offense is serious and involves
aggravating factors that may result in a lengthy prison sentence, bail must be
set sufficiently high to secure the defendant’s presence at trial.  In re
Hulin, 31 S.W.3d 754, 760 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

The record reflects that appellant has been charged with five
felonies.  He first was charged with two counts of burglary of a habitation.  The
stipulated evidence shows that appellant then committed aggravated robbery,
where he followed victims into their homes and threatened them with a gun. In
cause number 1203979, appellant shot at the robbery victim four times, striking
him in the leg.  Shortly after this crime, in another robbery, a co-defendant
shot and killed a victim while appellant struck another victim with his weapon.
 These offenses are serious and increasingly violent in nature.

This last felony resulted in appellant being charged with
capital murder in cause number 1203978. See Tex. Penal Code Ann. §
19.03(a)(2) (Vernon Supp. 2009).  The punishment for capital murder is life in
prison or death.  Id. § 12.31 (Vernon Supp. 2009). Appellant would not
be eligible for parole. See Tex. Gov’t Code Ann. § 508.149(b) (Vernon
Supp. 2009).  Because appellant faces life without parole or the death penalty,
the motivation to flee is a factor warranting a high bond.  The trial court may
have concluded that the bond set was reasonable based on the seriousness of the
offenses and the severity of the potential punishment. 

While each case should be evaluated based on the
individualized facts and circumstances presented, a review of decisions in
recent years may be instructive.  See Ex parte Beard, 92 S.W.3d at 571.  Bonds of similar
amounts for serious charges are often upheld.  See Ex parte Jackson, 257
S.W.3d 520, 522-23 (Tex. App.—Texarkana 2008, no pet.) (affirming denial of
reduction of $750,000 bail for defendant charged with murder during a robbery
after considering potential punishment and another offense); Cooley v.
State, 232 S.W.3d 228, (Tex. App.—Houston [1st Dist.] 2007, no pet.)
(affirming refusal to reduce $750,000 bail on three solicitation of capital
murder charges after considering seriousness of charges); Ex parte Chavfull,
945 S.W.2d 183, 186-87 (Tex. App.—San Antonio 1997, no pet.) (affirming refusal
to lower $750,000 capital murder bond after considering seriousness of crime
and safety of victim and the community).[3]

Ability to
Make Bond

The accused’s ability to make bond is merely one factor to be
considered in determining the appropriate amount of bail.  Tex. Code Crim.
Proc. Ann. art. 17.15(4); Ex parte Brown, 959 S.W.2d 369, 372 (Tex.
App.—Fort Worth 1998, no pet.).  A defendant’s inability to secure bond for the
bail set by the trial court does not automatically render the bail excessive.  Id.
 To show that he is unable to make bail, a defendant generally must show
that his funds have been exhausted.  See Ex parte Willman, 695 S.W.2d 752,
754 (Tex. App.—Houston [1st Dist.] 1985, no pet.).  Unless he has shown that
his funds have been exhausted, a defendant must usually show that he made an
unsuccessful effort to furnish bail before bail can be determined to be
excessive.  Id.

Appellant testified at the writ hearing that he was not employed
before his arrest except that he sometimes worked “off the books” for his
father and he was paid in cash.  He testified that he does not have $150,000,
or any other assets, to pay a bail bondsman.  His father works in retail, but
appellant does not know how much money he makes.  Appellant does not believe
his father could pay $150,000, but he acknowledged that he has other relatives in
Memphis who could help him.  No other witnesses testified.  There is no other
evidence of appellant’s financial capacity or attempts to obtain bond.  Specifically,
there are no bank statements or any other documents demonstrating appellant’s
financial status.  This unsupported, conclusory testimony does not justify a
reduction in the bonds.  See Ex parte Scott, 122 S.W.3d 866, 870 (Tex. App.—Fort
Worth 2003, no pet.) (considering the absence of specific evidence regarding
defendant’s ability to make bond in affirming trial court’s refusal to lower
bond); Ex parte Chavfull, 945 S.W.2d at 186-87 (affirming refusal to
lower bond based on defendant’s mother’s testimony that defendant had no money
and family could only raise $1000); Balawajder v. State, 759 S.W.2d 504,
506 (Tex. App.—Fort Worth 1988, pet. ref’d) (noting that vague references to
inability to make bond do not justify a reduction in the amount set); Ex
parte Miller, 631 S.W.2d 825, 827 (Tex. App.—Fort Worth 1982, pet. ref’d)
(recognizing that it is incumbent on the accused to show that he has made an
effort to obtain a bond in the amount set).

Because appellant provided little evidence supporting his
claimed inability to make bail and no evidence of his efforts to secure bond,
the trial court could have properly concluded that the amount of bail was
reasonable under the circumstances.  See Ex parte Scott, 122 S.W.3d at
870.

Safety of
the Victim and the Community

The future safety of both the community and the victim of the
alleged offense are to be considered in determining the appropriate amount of
bond.  Tex. Crim. Proc. Ann. art 17.15(5) (Vernon 2005).  The repeated and
unprovoked acts of violence in these cases pose a significant risk to the
community.  The trial court may have concluded that the number of offenses,
together with the escalating pattern of violence, warranted a bail sufficient
to ensure the safety of the community as a whole and of the individual victims
and witnesses who may testify at trial.  See Chavfull, 945 S.W.2d at 187
(considering defendant’s potential danger to the community as a factor in
denying reduction of bond).

Other
Factors

The trial court may also consider the defendant’s work
record; family and community ties; length of residency; and his prior criminal
record.  Maldonado, 999 S.W.2d at 93. There is no mention in the record
of appellant’s prior arrests or other criminal history, if any.  Apart from his
testimony that his father lives in Harris County, appellant offered no evidence
of ties to the community. Appellant had only lived in the area approximately
four years before his arrest.  The only testimony about his work history is
that he was unemployed but that he sometimes worked for his father “off the
books.”  None of these factors weigh in favor of a reduction in the bonds.  The
trial court may have concluded that appellant’s ties to the community were
insufficient to assure his appearance at trial.  See, e.g., Ex parte Brown,
959 S.W.2d at 373.

Conclusion

Appellant has not met his burden to establish that the bonds
in these cases are excessive.  We hold that the trial court did not abuse its
discretion in denying appellant’s request to lower the bonds. 

Accordingly, we overrule appellant’s sole issue and affirm
the trial court’s order.

 

PER CURIAM

 

Panel consists of Chief Justice
Hedges and Justices Yates and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]   The
writ hearing was brief; the docket indicates the hearing lasted thirty-five
minutes. Appellant was the only witness to testify. Appellant acknowledged on
the record that he had no objection to the stipulation of a narrative summary
of the testimony that would have been provided by Detective Squire concerning
his investigation of these crimes. The trial court also took judicial knowledge
of the probable cause affidavits and other matters in the case files that are
not a part of our record.





[2]   We note
that appellant’s application for writ of habeas corpus addressed only the
capital murder charge. At the writ hearing, appellant’s counsel asked the court
to consider the writ on all of appellant’s cases and the court granted the
request.





[3] Other
murder cases have held that a $1,000,000 bond is not excessive under certain
circumstances. See Ex parte Brown, No. 05-00-00655-CR, 2000 WL 964673
(Tex. App.—Dallas July 13, 2000, no pet.) (not designated for publication)
(holding that $1,000,000 bail not excessive for murder when defendant did not
present testimony relating to factors in article 17.15); Ex parte Pulte,
No. 2-03-202-CR, 2003 WL 22674734 (Tex. App.—-Fort Worth Nov.13, 2003, no pet.)
(not designated for publication) (holding that $1,000,000 bail not excessive
for solicitation of murder when record showed that defendant had assets, had
not shown evidence of bond he could make, and committed offense while on bond
for related offense); Ex parte Saldana, No. 13-01-00360-CR, 2002 WL
91331 (Tex. App.—-Corpus Christi Jan.24, 2002, no pet.) (not designated for
publication) (holding that $1,000,000 bail for capital murder not excessive in
light of violent nature of offense, defendant's family's ability post a
$500,000 bond previously, defendant's membership in violent gang, and other
evidence suggesting defendant posed flight risk and danger to community).